May it please the Court, Carolina Von Papias for Appellant Nicholas Delia. I don't want to reiterate any of the arguments put forth in the briefs. However, I just want to express the important point that the actions taken by the appellees is the government's way of getting around unlawful searches. If they can order someone to go into their home and produce something from the inside based on no probable cause, no reasonable cause, then government employees have no protection at all. Public employees like appellant are entitled to constitutional protections just as everyone else. A threat of insubordination against an employee in order to force the employee to waive their constitutional rights is not allowed. Counsel, I agree with you that this probably was a constitutional violation, but what about qualified immunity? Your Honor, qualified immunity states that the violation has to be a clearly established law. The underlying violation was a Fourth Amendment, something that has been clearly established for as long as I can remember. Well, I think that I would agree with you if they had gone into his house, but if they tell him to go in and bring the materials out, I'm not sure it was clearly established that that would be a violation of the Fourth Amendment. That's where I have a little difficulty. I think they realized that they couldn't go into the house, but I'm not sure it was clear that they couldn't have him go into the house and bring the materials out. Are there any cases that seem factually on point, following up on Judge Rollinson's question about having someone go into their home and bring something out? Your Honor, I looked for these cases factually on point, and I couldn't find one. Yeah, that kind of implies that it's not clearly established that if you have someone go into... It'll be clearly established after... I mean, if we decide to write an opinion on this, it would be clearly established as of this point, but prior to today, I think there is some concern that perhaps this was not clearly established. They could have waited to get an administrative search warrant. Right, and that shows that there was no probable cause, which shows there was a constitutional violation, but qualified immunity will protect the government actors if it were clearly established that this would be a violation of the Constitution. So that's where I think that you may have a problem with the government actors because they're entitled to qualified immunity, but could you discuss the attorney who was not a government actor? Right, Your Honor. He claims to be acting as an agent. However, in his brief, he cites that he only concurred with the decision that he had to confer with Bob Owens, another attorney. He conferred with the Chief Owens. I'm sorry, Bob Owens was on his name, with another city attorney, and he only concurred with the decision. So he was acting in his individual capacity, so no qualified immunity would be applied to him. So in other words, your argument is he was not ordered by anyone at the city to take this action on behalf of the city. Right, and he was also a very experienced administrative attorney. He's dealt with issues like this before, I'm sure. The reasonable thing to do would have been to wait and see if he could get an administrative search warrant, and that didn't happen here. Thank you. Ms. Diaz, the district court, as I understand it, in the oral ruling, ruled on the constitutional merits and found no constitutional violation, but then when he signed what appears to me to be an order prepared by the defense that there were no changes made, and he just signed off on it, he found qualified immunity with regard to everyone, including the lawyer Filarski. Now, I'm an interloper this week, but my understanding of Ninth Circuit law is that qualified immunity, that the Ninth Circuit has clearly held, that qualified immunity would not apply to Filarski. Your understanding is that qualified immunity would not apply to Filarski, and he ordered that in the actual order? Yes, Your Honor. Obviously, that was an error, and I agree with you. Well, so which controls? His finding of qualified immunity in the written order or his oral ruling that there was no constitutional violation, or both? I would think that the oral finding would control. I don't have any authority, legal authority for that assumption. However, obviously, there was an error, and it needs to be addressed. Well, if the oral one controls, you lose. If there's no constitutional violation, nobody's liable. Right. Unfortunately, I wasn't at that oral argument for the motion for summary judgment. However, we think, obviously, the court was wrong on every point they made, the oral, the written, and that's why we're asking this court today to address those issues. Could you address Monell liability vis-à-vis the city? Yes, Your Honor. My understanding of Monell is that if a policymaker makes the decision that is the underlying action that is complained of, then Monell liability is established. So who do you assert to be the policymaker involved in this case? We assert all of the fire, the chief, the chief of the firefighter, the firefighter chief, I'm sorry, was the policymaker. And we looked at his job description, and it clearly states that he was able to make policy. Also, he was the one who ordered the search, and he wrote it on the city letterhead, and he signed it. He didn't have to forward that to anyone. He didn't have to discuss it with anyone. He was the terminating factor to go into, to go and search Appellant's home. Can I take some time for rebuttal? I do. Thank you. I'm Howard Golds for Appellee's City of Rialto and individual defendant, Keil Becker and Wells, and I'm going to split my time with Mr. Tisdale. He's representing the defendant for our state. As to qualified immunity, I think the court hit the nail on the head in its earlier discussion. There are no cases on point. There is no case that has ever held that ordering a public employee to remove a purchased product from their home and put it on their lawn or something similar to that is a constitutional violation. I wouldn't concede that that was a constitutional violation. I think the district court did correctly hold that there was no threat of insubordination here. Was it a request? Well, I think it was an order, but if he had disobeyed the order, there was an outcome, which is he could have simply been disciplined. So your argument is that the fire chief could have ordered him to go into the house and get the materials out of his house in lieu of the fire chief going in and search, and it wouldn't have been a constitutional violation for him to do indirectly what the fire chief couldn't do directly? If he had available to him evidence, which he then decides, and I think there's a California jury instruction on point, and he decides not to produce, then there's a conclusion that can be drawn from his failure to produce that evidence. But you're taking it one step further. You're ordering someone to go. That's different. That negative inference is different than actually ordering someone into their house on pain of discipline to bring out materials in lieu of the fire chief going in himself and seizing the materials. But in the L.A. Police Protective League case, which is the closest one on point, there the officer was specifically told if he didn't obey, he would be subject to discipline for not obeying. Here, there's no such evidence in the record, and the district court noted that. So I don't think we're going to get punished for the disobedience, but he might have been very well punished for the fact that he didn't produce evidence that he otherwise could have had. But I don't think we need to reach that point, because I do think the qualified immunity principle is the one that applies here. Well, let me ask you kind of a related question. It would seem reasonable from your client's perspective, had the plaintiff been on some medical restrictions, and shouldn't be installing the installation that, they found he bought when they did surveillance on him, I think from Lowe's, that would be a much different case. But there were no medical restrictions in this case, so what business, if any, was it of the city's, whether he bought installation at Lowe's and installed it or didn't install it? It seems to me, whether it's a constitutional violation or not, one might say it's a tremendous abuse of government power to request him to go into his own home and bring this stuff out, when there's no medical restriction that would be preventing him from installing the installation. I disagree. I believe he was on paid medical leave at the time, and that was the problem. There were no medical restrictions. No, I believe he was on... You tell me in the record where there are medical restrictions about what he can do. Well, no, he was not reporting to work at the time. I understand that, but there weren't any restrictions on what he could do when he wasn't reporting. Well, I believe the concern was that he had misrepresented his medical condition when he applied for and obtained paid medical leave. The city does have a clear interest in ensuring that when a firefighter goes out on medical leave, that that be for truthful reasons, and the city had a reason to go ahead and investigate it, but no one here has claimed that the investigation or taping him while he went to the Lowe's is a constitutional violation. I understand that, but what was the rational basis for making him go into his home and get the installation? The installation, because the doctor never said he could install insulation. Well, I think the rational basis was that during the interview, he asserted he never installed it and had never performed any of the physical acts necessary to install it. And that turned out to be true, but I understand you didn't know that, but even if he did, there was no prohibition of him installing the insulation. I believe at the time, the people who were doing the investigation believed that there was a connection between his claims regarding why he was on medical leave and his then physical inability to install that insulation. And if he had installed the insulation, that would have been a problem. It may not have been determinative, but it would have been a problem. But what they said to him in the interview was that he was on medical leave. Not under this record, it wouldn't have been a problem because he wasn't on any restriction by the doctors. He went to the doctors three times, and they kept extending his leave. Never once did they impose any restriction of what he could do when he was off-duty. I have to say that I don't think anyone has ever raised a question of the propriety of the investigation. I don't think they have raised it in their papers. I don't think it was a cause of action in their complaint. I don't think the question of whether the city could have or should have investigated him is the issue here. Well, it could go to the issue of qualified immunity because what you did could strike someone as being irrational. Well, but the qualified immunity only goes to the issue of whether or not the law is settled regarding the ability to have him show them the insulation. The underlying reasons as to why, I don't think that is within the test of what is qualified or not qualified immunity. And I don't think that, I think the record is pretty clear that there was concerns that he had misrepresented facts to the city. And as an employee, that would be something you can discipline for is if he's misrepresented facts. And in this case, the belief was he had misrepresented facts relating to his physical condition. And the insulation or not, the lack of insulation of the insulation was a fact that was important to the city. And it was important to the other side because there's a long discussion in the transcript about whether that had occurred or not. So in terms of qualified immunity, I think the point is that there is no case that is factually close to this one in terms of what was done. And the concept that you have three firefighters who are being advised by an attorney but are nonetheless supposed to come to some conclusion about what they're doing, I think is exactly why the district court granted summary judgment and exactly why these individual defendants are entitled to qualified immunity. Well, we don't know because the district court's oral pronouncement, as Judge Bennett noted, is conflicts with the written judgment. Because if you have no constitutional violation, you would never find qualified immunity. So we don't know exactly what the district court decided. And I don't disagree that the transcript becomes ambiguous, but he was, I think, very explicit about finding qualified immunity, which is why I think the qualified immunity principle is the one that gets enunciated in the subsequent statement of decision or statement of adjudicated facts. Because he is, I think, very clear in the transcript about that, that the judge may have also believed there was simply no constitutional violation is quite possible, but it didn't seem at the time necessary to reach that issue. Could you discuss liability? Certainly. I'll make it quick because I do want to leave Mr. Tisdale some time. The Rialto, the cases are clear that you look to state law or to the law of the entity involved to determine whether they're a policymaker. The Rialto Municipal Code, which we cited sections up to you. Where is that in the record? I wanted to read that with you because I'm not sure it's as clear as you type it in. If you take a look at our brief. Well, let's read it from the record. Where is it in the record? It is attached, I believe, Your Honor, to our summary judgment motion and I think to one of the declarations. I would have to get the record out to find it. I underlined something there. I thought there was a catch-all phrase there that gave authority. I don't believe so. Okay. You have the ordinance? Yes. The three ordinances involve 2.34.020, 030, and 040. Right. I was looking at 2.34030 and it says there is a chief of the fire department who is subject to the general supervision of the city administrator and with the approval of a city council solely responsible for the management and conduct of the department. Right? Yes. Okay. So as a closing council pointed out, when this order was given by the fire department, the fire chief didn't get any approval from the city administrator, from city council, or anyone. And the cases involved explicitly deal with that situation and the Ninth Circuit has explicitly delineated a difference between a decision maker and a policy maker. And, you know, as we cited in the case of Cullen v. City of San Diego, which actually involves the fire chief, a public employee can have discretion. They can make decisions, but are not a policy maker under Monell. And that's exactly what happened here. The city's personnel rules and regulations are set by the city council and ultimately administered by the city administrator. The fact that a fire chief or any other public official below that policy-making level may not be able to make a decision on a policy maker, or may have discretion, does not mean that that person becomes a policy maker. Because what it ends up is, is respondeat superior. That's the problem. But the chief in this case made a policy decision to permit the de facto search of an employee's house. Is there any written policy on that? I don't believe there is, and I don't... So you made a policy to allow the search of an employee's house. And if there is no written policy by the city, then where did this policy come from? That's not a decision. That's a policy. I disagree. I believe that what the chief was doing was implementing policies relating to internal affairs investigations. And I would contrast that again with the City of San Diego case I just cited the court to, where the chief had hiring and firing powers, and the court ruled, this court ruled, that the fire chief had discretion. And the court ruled that that was not a policy-making decision. Because those personnel rules were ultimately the province of someone higher up. There's a difference when there is a rule that's been promulgated by a higher authority, and the government official is implementing those rules. But in this case, there are no rules that have been implemented by the city that governed searches of employees' premises. So if there were no policy that was implemented that he's following, then where is this decision coming from? It has to be a policy decision if there is no policy that he's following. I disagree. I think public employees exercise discretion every day. There are innumerable issues that come up that they don't have a specific policy on. They have policy or governance. There's a policy and practice or something that they're following generally when decisions are made in the government bureaucracy. I think as with all jobs, issues come up that are unexpected. Life is stranger than fiction, and things happen. And if that happens, you seek guidance from those who supervise you. If something comes up and you don't have the authority to make the decision, or to implement the policy, then you don't have the authority to make the decision. Or you don't know what the policy is. Then you ask someone higher than you, what is the policy in this situation? I think that you can make a decision, and I think this Court has been clear in the cases and the Supreme Court has been clear, that making decisions does not turn you into a policymaker for purposes of Monell. And making a decision about issuing an order regarding showing some fiberglass does not turn you into a policymaker for the city of Rialto. That was a very, you're talking about invading the home, the sanctity of the home, when you're talking about going in and de facto searching somebody's house. That's not just a decision. That's a very serious... Well, and they sought and received legal advice about that, and the district court obviously agreed that it wasn't a constitutional violation. I understand the Court's point that you believe it was a constitutional violation, but there seems to be some sense of reasonable minds differ about this particular issue. The three reasonable minds are the ones that are going to... I do understand that. But I do think the principle that the whole point of Monell is not to turn every public decision under 1983 to respond to the spirit of the jury. But, Mr. Golds, doesn't, in effect, the first section that's relevant here of the municipal ordinance, 2.34.020, doesn't that, in effect, insulate the city from Monell liability in every situation unless it's actually an action taken by the city council? No, I think the city administrator can take action that is also covered, that would also make him a policymaker. I do think, however, that it ends at the city administrator and that a department head is different. You see, the one thing I would like to point out is that in the cases that involve police chiefs, police chiefs under California law have specific policymaking authority, and they're specifically delineated in state law as having policymaking authority. That doesn't occur for fire chiefs. The fire chief is simply a department head, just like public works or planning or something else. So, basically, your argument is that no city that has a language, general supervision language, and no city could a fire chief ever make, do anything that would subject the city to Monell liability? What I would argue is that a public employee who is not a policymaker making a decision, exercising discretion, that the simple fact they've exercised discretion to make a decision does not cause Monell liability to arise. And that would be, for this court to find that, I think would be a significant departure from what the law is in terms of Monell liability, that it simply has been clear that there has to be something more than a decision being made. But if the fire chief said, it is our policy that we will search employees' houses at any time we think that there is evidence of malingering, would he be a policymaker at that point? Well, no, because I don't think he has the authority to do that. It doesn't matter if he has the authority or not. If he said that, would that make him a policymaker for purposes of Monell? Monell doesn't look at whether or not he authorizes, whether or not he had ostensible authority to do it. Why wouldn't that make him a policymaker? Because he can't make policy. But if he does it. But he can't. He can say whatever he wants, but the city doesn't make that policy. The fact that I make some statement about my law firm, I'm not a policymaker. I don't have the authority to do it. I can say whatever I want. Have you heard of a thing called the parent authority? Absolutely, but the city has to grant the parent authority, which it hasn't done in this case. In fact, that's exactly the point of the code section. If a person holds themselves out as being a policymaker and the city does not rein them in, there would be no policymaker authority? Well, I think that hypothetically goes a little further. But here, the city explicitly. But I'm asking you under that scenario, would there be Monell liability? I don't think it's possible because the city codes the matter of public record. People are charged with understanding what it says. And therefore, I don't think the fire chief could create his own apparent authority, no matter what he did. Ultimately, he's subject to the laws of the city and the state of California. And so the fire chief simply cannot convert himself into a policymaker. If we find a case where a fire chief has been held to be a policymaker, do you lose? No. Why not? Because it's subject to the individual discretion of the jurisdiction. I thought you said in California, fire chief. You're just talking about this particular scenario? I'm saying that police chiefs specifically in California have a different authority. And you said fire chiefs do not. So that's why I'm asking you the question. If we find a case where a fire chief has been held to be a policymaker, do you lose? No. Why not? Because the city of Rialto could have turned... But now you're narrowing your argument. First you made your argument regarding the state of California. I don't believe I am. I think what I said is fire chiefs are different than police chiefs. Under California law is what you said. Right. But fire chiefs, because there is no state statute that deals with fire chiefs, you have to look at the local jurisdiction. Now you've refined your argument. I think it's the same argument. All right. You can cede your time. Thank you, Your Honor. May it please the Court, John Sisdale, Gilbert Kelly, Crowley Jeanette, for appellee Steve Filarski. I think the Court hit the nail on the head, opening up with the statement that the whole key for qualified immunity is whether there is a clearly established violation here. And nothing could be further from the truth. Even if this Court, on a 20-20 hindsight look-back, decides that, well, maybe it was a constitutional violation, that there was a violation of civil rights, the issue is whether at the time, to the actors, it was a clearly established violation. You have a problem as to whether or not Mr. Filarski was a government actor. I believe that he was acting as an agent for the City of Rialto. There's no other reason for him to be doing what he's doing. What Mr. Filarski does is, as an independent contractor, working with a number of municipalities, he operates and conducts internal affairs investigations. How can he be an independent contractor and an agent at the same time? The City employs him in that capacity. He's not a W-2 employee. That's the only distinction. But they authorize and empower him as an agent of the City to conduct that internal affairs investigation. The only distinction being that he doesn't have the power to issue orders. He's there to conduct the investigation, find facts, and advise the City what to do. Well, how is that different from our Gonzalez case? I don't know that it is. Well, then you lose. I'm sorry? Then you lose a qualified immunity, if it isn't different. I don't see, I really don't see the distinction as to why Mr. Filarski is acting in an individual capacity as opposed to on behalf of the City of Rialto. It's his only reason for being there. The other distinction on qualified immunity being that under Saucier v. Katz, the two-pronged test involves looking to see whether there's a violation and then whether it's clearly established. But it's only extended to government actors. And I'm at a loss to decide how Mr. Filarski could be anything other than that. I understand there's no direct case law in the Ninth Circuit on that issue, but Richardson v. McKnight, the 1997 Supreme Court case, does find immunity for private defendants such as doctors or lawyers who perform these services at the behest of municipalities. And there's at least one Sixth Circuit decision, Cullinan v. Abramson, which clearly applies this to independent actors who are not City employees. Were that not the case, why would any lawyer risk acting in the capacity that Mr. Filarski does to provide internal affairs investigation assistance if he was going to be exposed individually? It wouldn't make any sense. It makes you a little more careful in terms of how you conduct the affairs. And we think that we acted with great care, especially in view of the fact that there wasn't a clearly established constitutional issue here. Mr. – there were a dozen people here. A dozen people who absolutely were unclear as to whether this constituted Here's the problem. Mr. Filarski, the employee's attorney and Mr. Filarski went back and forth. The attorney was saying, this is a constitutional violation. So that really put Mr. Filarski on notice that he was treading on thin ice. I mean, it wasn't like everybody agreed that this is what we should do. It was a very heated discussion regarding whether or not this was appropriate. But there was – yes, but just because Mr. Delia's attorney says that it's a constitutional violation doesn't make it so. I know it doesn't make it so, but it should raise a pretty big red flag. Sure. And that was discussed. And nobody had ever seen this before. Here is a room full of people. There's three lawyers. There's Mr. Delia's lawyer, Mr. Filarski, and the city attorney got involved on the telephone. There's two battalion chiefs, a fire chief. All these people are consulted. And in addition to that, there are no less than four union representatives in the room, none of whom utter a peep about whether this is inappropriate. It was clearly – yes, they were confused. It was not clear. It was not sufficiently clear that what they were asking Mr. Delia to do was a violation of any rights whatsoever, civil rights under the Constitution or otherwise. The investigation commenced with Mr. Filarski after the Sub Rosa films were already completed. And they clearly had a reasonable basis for thinking that he was calling in sick, being on sick leave, and doing something else while he was there. Now, whether that's right or wrong or not, whether the Sub Rosa video turned out to be material or not, it certainly gave them something to consider. And that's when he was brought in for the examination under oath. Now, Mr. Filarski had no idea where this examination was going to lead. And when Mr. Delia offered this explanation – which is the key, we think. He – we didn't go in and dig this up. We didn't go in and knock his door down with a sledgehammer. He offered this as an explanation for why he was videotaped at a home repair store buying building materials. And he also explained that he had not installed the installation. That's right. And that's when they took a break in the proceedings and they went out and they said, well, you know what? We didn't anticipate this explanation. We didn't know where this was going to go. If Mr. Delia is correct, then this investigation is over. So they went back into the room and told Mr. Delia and his attorney precisely that. They said, fine. If that's your explanation, just show us the building materials. And you said no. And this investigation's over and you're exonerated. Why did he need to give you an explanation? There weren't any medical restrictions that would have prevented him from installing the installation he had bought that you observed him buying on the surveillance tapes that he admitted to buying. Well, I'm not sure what the city or Mr. Filarski knew about the extent to what his medical limitations are. Well, you know the record. Tell me in the record if there's a single reference to a medical restriction on what he could do while he was off duty. I don't think that was provided to the city. I don't think that he was ever given evidence of exactly what he could or could not do. In reality, in reality, for reasons that I totally understand, his medical situation was slightly embarrassing. And so he told the city one thing. He told the fire department one thing because he didn't want to tell them what he was really out for. And I understand that. It's a little bit embarrassing. And fire departments, as I'm sure you know, they're kind of like big families and everybody knows what everybody's doing. That's how they knew Mr. Delia was remodeling his house, for starters. So he didn't want to disclose what his true medical condition was. So the level of disclosure to the city before Mr. Filarski even got involved was suspicious. And this comes on the heels of the fact that just a few months previously, Mr. Delia was the subject of another internal affairs investigation, which Mr. Filarski examined him on. And Mr. Filarski only knew this. He was disciplined and demoted. All right, counsel, you're going far beyond this case. That's fine. Okay, I'm just saying that... You've ceded your time, so if you could sum up in the next 30 seconds. Fine. On qualified immunity, the case law that I've cited supports the application to the individual. There's no cases to the contrary. Mr. Filarski's acting as an agent of the city is entitled to this protection. Going back to your comment about the scope of Judge Real's written versus oral order, what may have been the problem is that originally, and for many years, the test on qualified immunity was enunciated in Saussure versus Katz. All right, counsel, you've exceeded your time. We thank you. May I make one point? No. You've really exceeded your time. Okay. Thank you. Thank you. Rebuttal. May it please the Court? On qualified immunity, the question to be asked is, would a person in the same position be on notice that their conduct was illegal? The Court brought up the heated arguments between the attorneys. I must note that Peel and Becker, other named defendants in the case, were there when the discussions took place. The fire chief was the fire chief of many years. He would have been on notice that the conduct was illegal, and so would have Peel and Becker. As for Filarski, it hinges on his agency. And as counsel just stated, that he was an independent contractor is in clear contrast to agency principles. Filarski, you know, he concurred and discussed with someone, but he wasn't an agent of the city, so qualified immunity does not apply to him. As for Monell, the – oh, and just to address another point that counsel made, that they acted with great care. I don't believe that that's the case here. They could have waited and waited for the administrative search war to take place. And this was an issue of someone's sick time, whether he was remodeling his house on his sick time or not. The fact that the city is even considering searching someone's home for such a minuscule issue is mind-boggling. As for the Monell, the chief made the decision himself, and the counsel points out that a decision and a policy is different from each other. However, a decision is whether to have so-and-so on the schedule on this day. A policy is something more. To allow a city employee – to order employees to go into their home and carry out materials, that's a policy. And who knows, it could be going on today. It hasn't been said – no one said it was wrong. This Court's decision hinges on whether that was wrong. And that's all I have. All right, thank you. Thank you, counsel. The case has already been submitted for a decision by the Court. The next case on calendar for argument is
judges: Aldrich, Bennett, Goodwin